UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 14-CV-6668 (JFB)(ARL)
_____

JEFF S. ROTH,

Plaintiff,

VERSUS

FARMINGDALE PUBLIC SCHOOL DISTRICT,

Defendant.
_____

**MEMORANDUM AND ORDER**
February 26, 2016
_____

JOSEPH F. BIANCO, District Judge:

Jeff Roth ("Roth" or "plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this action against the Farmingdale Union Free School District[1] ("District" or "defendant") on June 20, 2011, alleging that the District violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-34; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12117. Specifically, plaintiff alleges that defendant discriminated and retaliated against him by failing to hire him. Plaintiff also alleges that defendant violated his rights to free speech and due process, and alleges slander by defendant.

Defendant moves to dismiss the complaint, pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) the allegations that defendant discriminated against plaintiff on the basis of gender and disability are barred for failure to exhaust administrative remedies; (2) plaintiff's ADEA claim is barred by the statute of limitations because he failed to file a timely administrative charge with respect to his employment application, and also fails to state a claim; (3) plaintiff fails to state a Title VII retaliation claim; (4) plaintiff fails to state a First Amendment claim; and (5) plaintiff fails to state a due process claim. Defendant also argues that, because the federal claims should be dismissed, the

---

[1] Incorrectly sued herein as the Farmingdale Public School District.

Court should decline to exercise jurisdiction over the remaining state law claims.

As discussed below, defendant's motion to dismiss is granted in part and denied in part. Plaintiff's Title VII and ADA claims alleging discrimination are barred for failure to exhaust administrative remedies, and plaintiff's ADEA claim is barred by the statute of limitations. Plaintiff also fails to state a cause of action with respect to his Title VII retaliation claim. However, in an abundance of caution, the Court grants plaintiff leave to replead these claims. In so doing, plaintiff must attempt to provide grounds for equitable tolling and must allege how the events and incidents plaintiff describes in his complaint were taken on the basis of plaintiff's protected status under Title VII, the ADEA, or the ADA, such that a plausible discrimination or retaliation claim exists. Plaintiff is also granted leave to replead his state law slander claim so as to give him the opportunity to allege the time, place, and manner of the allegedly false statements, as well as to whom the statements were made. Defendant's motion to dismiss is denied as to plaintiff's First Amendment and Due Process claims.

I. BACKGROUND

A. Factual Background

The following facts are taken from the amended complaint filed on July 8, 2015 ("Am. Compl."),[2] as well as the underlying New York State Division of Human Rights complaint ("DHR Compl."), and are not findings of fact by the Court. Instead, the Court will assume the facts in the complaint to be true and, for purposes of the pending 12(b)(6) motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

Plaintiff has never been employed by the defendant, but rather, alleges that he was "discriminated on a number of employment opportunities." (Am. Compl. at ¶ 8.) Specifically, plaintiff challenges the defendant's decision to provisionally appoint Joseph Hassett to the position of Audiovisual Technician from December 2010 – July 2011. (*Id.* at 7.) Plaintiff interviewed, but was not selected for, the provisional appointment. (*See id.*) Plaintiff was told that the District hired a more qualified candidate for the provisional hire position. (*Id.* at 7, 15.)

Plaintiff alleges that he attended his first Board of Education ("Board") meeting in January 2011, at which he requested that the Board "table the provisional appointment." (*Id.* at 15.) In July 2011, an eligible list of candidates for the audiovisual technician position was established. (*Id.* at 7.) The District was required to appoint one of three individuals certified by the civil service commission with the three highest scores on the examination who were willing to accept the appointment. N.Y. Civ. Serv. Law. § 61(1). Plaintiff was not "reachable," or one of the individuals with the highest scores on the list. (Am. Compl. at 7, 15.) Plaintiff contends that the defendant hired Mr. Hasset, even though there was an individual, Carlo Mastrandrea, who had a score above Hasset's on the competitive list. (*Id.* at 15.)

Plaintiff claims that, on February 20, 2012, he sent three letters to every member of the Board and the Superintendent of Business, Paul Defindini. (*Id.* at 8.) Plaintiff subsequently spoke on the telephone to Shari Eivers, the Board's president, which

---

[2] Plaintiff's amended complaint attached his initial complaint, filed November 7, 2014, as well as several additional documents. The Court cites to the pagination in the amended complaint.

Ms. Eivers memorialized in a March 30, 2012 letter. (*Id.* at 8, 32-34) Plaintiff claims that they discussed "the harassment and intimidation he was receiving." (*Id.* at 8.) Plaintiff then arranged a meeting with the Board's trustees John Capobianco and Rick Morrison, and Ms. Eivers, at which plaintiff relayed the information in the March 30, 2012 letter, as well as "his advocacy for solar photovoltaic systems and LED stage lighting to be included in the Energy Performance contract." (*Id.*) Plaintiff also discussed "security technology inadequacies of the district" and "what he felt was a complacent attitude toward security in the budget, and informed them of alternative options to state implementing the security technology." (*Id.*)

Plaintiff claims that, on May 16, 2013, an "incident occurred in the main lobby of the High School before the Orchestra String concert," at which he was "cornered, baited, taunted, and laughed at." (*Id.* at 9.) Plaintiff claims that he was removed from the concert, and that he was also removed from an open Board meeting in May 2013, by the Board, whose members claimed that the meeting was "invitation only." (*Id.* at 18.)

Plaintiff claims that, in September 2013, the Board had the Nassau County police inform him that he was not allowed to attend public events or board meetings. (*Id.*) Plaintiff alleges that he informed the officers of the Committee on Open Government's Advisory Opinion,[3] and explained that he was only interested in attending Board meetings. (*Id.*)

Plaintiff alleges that, when he went to vote on August 20, 2013, and November 5, 2013, he was "followed, asked what his purpose was for being in the building, verbally and physically intimidated and literally hurried out of the building by a custodian not a security guard." (*Id.* at 9.)

On October 22, 2013, plaintiff alleges that he attended a PTA meeting "to discuss a security vulnerability resulting from an October 11, 2013 burglary and arrest of two former students." (*Id.*) Plaintiff claims that "a custodian who was misinformed of Jeffrey Roth's right to be in the building for public events or business was being an instigator even though Jeffrey Roth reported to security when entering the building." (*Id.*) Plaintiff claims that he inquired about purchasing tickets for the fall musical when he was leaving the building, and subsequently received a letter from Superintendent John Lorentz, which claimed that plaintiff unlawfully entered the building and entered unauthorized areas. (*Id.*) At a November 8, 2013 football game, plaintiff claims that a custodian "cursed and provoked Jeffrey Roth into a physical altercation while threatening to call the police." (*Id.*) Plaintiff alleges that, on November 9, 2013, the incident was reported to the "Nassau county Problem

---

[3] On October 8, 2013, the New York State Department of State Committee on Open Government issued an advisory opinion to plaintiff regarding the application of the Open Meetings Law to a special recognition ceremony at which a quorum of the Board and various students and staff were present, and which plaintiff was informed was open by "invitation only." (*Id.* at 10.) The advisory opinion was based solely upon the facts as presented by plaintiff. (*Id.*) The Board did not provide any information relating to plaintiff's allegations. (*Id.*) The advisory opinion concluded that, if a quorum of the Board gathered as "active participants acting in their capacities as Board members," such a gathering would constitute a meeting within the coverage of the Open Meetings Law, but if the Board members were gathered as part of a "parental or community audience, and did not function as a body," the gathering would not constitute a meeting subject to the Open Meetings Law. (*Id.* at 12.)

3

Orientated Policing Unit Officer Lamonaca who had been cc'ed on all correspondence since the May 16, 2013 incident." (*Id.*) Plaintiff claims that it was determined by his "community advisors to no longer attend public events for fear of his safety, to only attend board of education meetings where his advocacy is recorded within the minutes and to report the matter to the Commission of Human Rights." (*Id.*)

On December 16, 2013, plaintiff filed a complaint with the New York State Division of Human Rights ("DHR"), alleging that he was discriminated against on the basis of his "age, arrest record, and marital status." (DHR Compl., Ex. C to Torrey Aff.) Specifically, plaintiff claimed that he was "42 years of age and single" and "was arrested in 1996 for a DUI. Because of this, I have been subjected to unlawful discriminatory actions." (*Id.* at ¶ 1.) Plaintiff further claimed that, although he passed the civil service test and applied for an Audio Technician position in 2011, "a younger and less qualified person was hired." (*Id.* at ¶ 2.) Plaintiff claimed that in May 2012, at a meeting with members of the Board, he asked why someone with less experience was hired, and Eivers made a comment about his age and marital status. (*Id.* at ¶ 5.) Plaintiff also alleged that he began attending Board meetings in 2010, at which he advocated for "better security and surveillance systems to be installed at the school" as well as solar panels and energy efficient stage lighting. (*Id.* at ¶ 3.) Plaintiff also claimed in December 2012, "after Sandy Hook," he "became vocal at the meetings because of various security aspects which the respondent had become complacent with." (*Id.* at ¶ 4.) Plaintiff further claimed that, in May 2013, Ms. Eivers had him removed from a public concert because he was supporting a different candidate for Board president, and a week later, Superintendent Lorentz had him removed from another Board meeting, claiming it was "invitation only." (*Id.* at ¶ 6.) Plaintiff alleged that the situation had "escalated" to the point that he was being told that he could not "attend public assemblies such as music or athletic events." (*Id.* at ¶ 7.)

Plaintiff alleges that, in October 2014, he was issued a letter banning him from public Board meetings for one month. (Am. Compl. at 18.) Plaintiff claims that when he arrived at a Board meeting, a security guard attempted to remove him, plaintiff requested that the police be called, plaintiff spoke to the police, and then plaintiff left "without incident." (*Id.*) Plaintiff claims that, in November 2014, he received a letter from the Board suspending him from Board meetings and any public events for three months. (*Id.* at 19.) Plaintiff also claims that the letter threatened his arrest. (*Id.*)

B. Procedural History

Plaintiff filed the complaint in this action on November 10, 2014, and an amended complaint on July 8, 2015. Defendant filed a motion to dismiss on August 12, 2015. Plaintiff filed an opposition on September 18, 2015, and defendant filed a reply to on October 2, 2015. The Court has fully considered the arguments and submissions of the parties.

II.  STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

4

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556-57).

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obligated to construe the [plaintiff's] pleadings . . . liberally." *McCluskey v. New York State Unified Ct. Sys.*, No. 10-CV-2144 (JFB)(ETB), 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim.").

5

III. DISCUSSION

A. Failure to Exhaust

Defendant argues that plaintiff's Title VII and ADA claims alleging gender and disability discrimination are barred due to plaintiff's failure to exhaust administrative remedies. Specifically, defendant argues that plaintiff never raised claims of gender or disability discrimination in his DHR charge, and such allegations are unrelated to any claims asserted in the administrative proceeding. Thus, defendant argues that the Title VII claim based on gender and the ADA claim are unexhausted and should be dismissed. As set forth below, the Court agrees.

1. Legal Standard

Generally, to bring a Title VII discrimination claim in federal district court, a plaintiff must first exhaust his administrative remedies by "filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e-5(e)). The same procedures apply for ADA employment discrimination claims. *See* 42 U.S.C. § 12117(a) (ADA employment discrimination procedures shall include those set forth at 42 U.S.C. § 2000e-5(e)). However, "'claims that were not asserted before the EEOC [or an appropriate State or local agency] may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)). "Reasonably related conduct is that which 'would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" *Id.* (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359-69 (2d Cir. 2001)).[4] In determining whether a claim is "reasonably related" to the EEOC charge, "'the focus should be on the factual allegations made in the [EEOC] charge itself'" and on whether those allegations "gave the [EEOC] 'adequate notice to investigate'" the claims asserted in court. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201-02 (2d Cir. 2003)).

2. Application

Plaintiff's DHR complaint indicated that he was discriminated against based on his age, arrest record, and marital status. The DHR complaint is devoid of any reference to gender, sex, or disability discrimination, and the Court finds that claims that defendant's actions were motivated by discrimination on the basis of gender, sex, and disability are not "reasonably related" to his claims that defendant discriminated against him on the basis of his age, marital status, or arrest record.[5] *See Petty v. City of*

---

[4] Two other kinds of claims may be considered "reasonably related": those alleging "'an employer's retaliation for filing an EEOC charge'" and those alleging "'further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 458 (2d Cir. 2009) (quoting *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993), *superseded by statute on other grounds*). Neither is at issue in this case.

[5] Although plaintiff has not specifically alleged in his amended complaint that he was discriminated against on the basis of marital status or arrest record, the Court notes that such claims would not be cognizable under Title VII. "Federal law does not protect individuals against discrimination based on criminal

*New York*, No. 10-CV-8581 (KPF), 2014 WL 6674446, at *10 (S.D.N.Y. Nov. 25, 2014) (finding claims of race and disability discrimination were not reasonably related to allegations of discrimination based on arrest record that were raised in administrative complaint); *DiProjetto v. Morris Protective Serv.*, 306 F. App'x 687, 688 (2d Cir. 2009) (finding claims of race, gender, and disability discrimination were not reasonably related to allegations of national origin discrimination raised in EEOC charge). Accordingly, plaintiff has failed to exhaust his administrative remedies with respect to the Title VII claim based on gender or sex and the ADA claim. The Court, therefore, dismisses these claims for failure to exhaust. In order to properly exhaust his administrative remedies with respect to these claims, plaintiff would have needed to file an administrative charge within 300 days of the conduct at issue. *See Goodwin v. Solil Mgmt. LLC*, 10-CV-5546 (KBF), 2012 WL 1883473, at *4 (S.D.N.Y. May 22, 2012); 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117. More than 300 days have passed since that date, and plaintiff has not alleged any basis for equitable tolling. *See, e.g.*, *Epps v. City of Pittsburgh*, 33 F. Supp. 2d 409, 413 (W.D. Pa. 1998) (finding

---

history." *Witharana v. NYC Taxi Limousine Comm'n*, No. 13-CV-4338 (ENV)(MDG), 2013 WL 5241987, at *2 (E.D.N.Y. Sept. 17, 2013); *see also Parks v. New York City Dep't of Corr.*, 253 F. App'x 141, 143 (2d Cir. 2007) (holding that "the District Court correctly concluded that Title VII does not cover alleged discrimination on the basis of an employee's arrest record.") Further, "Title VII does not protect against discrimination on the basis of marital status alone," though a claim of marital status discrimination is cognizable under N.Y. Executive Law § 296. *Fertig v. HRA Med. Assistance Program*, No. 10-CV-8191 (RPP), 2011 WL 1795235, at *3 (S.D.N.Y. May 6, 2011); *see also Singh v. New York State Dep't of Taxation & Fin.*, 911 F. Supp. 2d 223, 233 n.3 (W.D.N.Y. 2012) (noting that marital status is not a protected class under Title VII).

no grounds for equitable tolling where no charge was filed with EEOC).

### 3. Failure to State a Claim

The Court also concludes that, even assuming *arguendo* that plaintiff's claims for gender and disability discrimination are timely, they are not plausible and, thus, cannot survive a motion to dismiss. In particular, although plaintiff checked off the boxes on the complaint form for gender/sex and disability discrimination, the amended complaint is completely devoid of any factual allegations showing how the defendant's failure to hire plaintiff was motivated by plaintiff's gender, sex, or disability.

Plaintiff fails to allege anywhere in his amended complaint that he was discriminated against on the basis of his gender or sex, apart from checking off the box indicating such discrimination at the beginning of the complaint. Such allegations are, therefore, insufficient to state a claim of discrimination, even where the plaintiff is *pro se*. *See, e.g.*, *Gear v. Dep't of Educ.*, 07-CV-11102 (NRB), 2010 WL 5297850, at *5 (S.D.N.Y. Dec. 21, 2010) (*pro se* plaintiff's "single, conclusory allegation that [the union] would have acted differently if she were white" was insufficient to state a plausible claim for relief where the "allegation [was] unaccompanied by any facts regarding [the union's] statements, actions, or policies that would support a plausible inference of discriminatory animus or disparate impact"); s*ee also Martinez v. City of New York*, 338 F. App'x 71, 73 (2d Cir. 2009) (summary order) (dismissing *pro se* appellant's complaint that "he was improperly fined three days' pay based on his supervisor's bias against African-Americans" because the "complaint acknowledged the Defendants' non-

discriminatory reason for the adverse action and failed to allege facts which, if proved, would establish that this reason for the penalty was pretextual, and that the action was, in fact, taken due to a discriminatory animus"); *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 269 (E.D.N.Y. 2009) ("No identification of particular events or facts underlying the race-based discrimination claims is set forth in the amended complaint, and thus the claim is properly dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure."); *Zheng v. Wong*, No. 07-CV-4768 (FB)(JO), 2009 WL 2601313, at *7 (E.D.N.Y. Aug. 24, 2009) (dismissing sex discrimination claim because complaint contained no factual allegations to support claim); *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 463 (S.D.N.Y. 2007) ("A complaint consisting only of assertions, setting forth no specific facts upon which a court could find a plausible violation of Title VII, must be dismissed for failure to state a claim under Rule 12(b)(6).").

Plaintiff also fails to state a claim for disability discrimination. Under Title I of the ADA, employers are prohibited from discriminating "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Employers must make "reasonable accommodations" for qualified individuals with a disability, unless the employer can show that such an accommodation would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). To defeat a motion to dismiss, "'a plaintiff need only give plausible support to a minimal inference of discriminatory motivation.'" *Dooley v. JetBlue Airways Corp.*, -- F. App'x --, No. 15-CV-1356, 2015 WL 9261293, at *3 (2d Cir. Dec. 18, 2015) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). The ADA Amendment Act of 2008 ("ADAAA") defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Here, plaintiff has failed to plausibly allege that he is disabled. The only reference to any disability by plaintiff was his allegation that "[t]he disability aspect of this case relates to the Audio Visual Supervisor Jeffrey Pritzker who since his hiring in the 90's has spoken negative comments about [plaintiff's] moral character and mental health." (Am. Compl. at 16.) Plaintiff has not alleged that he actually is disabled, nor does he allege any facts for the Court to determine whether he is disabled within the meaning of the ADA. *See, e.g.*, *Dechberry v. New York City Fire Dep't*, No. 14-CV-2130 (KAM)(SMG), 2015 WL 4878460, at *16 (E.D.N.Y. Aug. 14, 2015) ("Without any factual specificity as to the alleged disability claims and the major life activities affected, the Complaint fails to plead that plaintiff was disabled."); *Emmons v. City Univ. of New York,* 715 F. Supp. 2d 394, 409

(E.D.N.Y. 2010) (plaintiff failed to plead disability where complaint did not properly "allege any substantial physical limitations").

Further, plaintiff has not alleged that Pritzker was in any way involved in the decision not to hire plaintiff, or that the District knew or believed him to be disabled, and thus, did not hire him as a result. Thus, plaintiff also fails to allege that he suffered adverse employment action because of a disability. *See, e.g.*, *Garnett-Bishop v. New York Cmty. Bancorp, Inc.*, No. 12-CV-2285 (ADS)(ARL), 2014 WL 5822628, at *27 (E.D.N.Y. Nov. 6, 2014) (dismissing ADA claim where plaintiff "fail[e]d to plead facts sufficient to show any connection between her alleged 'disability' and her termination."). Accordingly, plaintiff's claim for disability discrimination under the ADA cannot survive the motion to dismiss.

In an abundance of caution, however, the Court will allow plaintiff to replead his Title VII and ADA claims, and give him the opportunity to provide a basis for equitable tolling (if such a basis exists) for his failure to exhaust at all with the EEOC on the ADA claim. In the amended complaint, plaintiff must explain why equitable principles should excuse his failure to file an administrative charge concerning the Title VII and ADA claims within 300 days of the alleged discriminatory conduct. Plaintiff must also set forth additional allegations as to how the events and incidents he describes in his complaint were taken on the basis of, or related to, his protected status under Title VII or the ADA.

### B. ADEA Claim

Defendant argues that plaintiff's ADEA claim alleging discrimination on the basis of age in connection with his application for the 2010 provisional appointment must be dismissed because it is barred by the statute of limitations and also fails to state a claim. As set forth below, the Court finds that the ADEA claim is barred by the statute of limitations.

1. Applicable Law

To assert an ADEA claim in federal court, a plaintiff must file an administrative charge alleging discrimination within 300 days of the alleged discriminatory conduct. *O'Grady v. Middle Country Sch. Dist. No. 11*, 556 F. Supp. 2d 196, 199 (E.D.N.Y. 2008) (citing *Ruhling v. Tribune Co.,* No. 04-CV-2430 (ARL), 2007 WL 28283, at *8 (E.D.N.Y. Jan. 3, 2007) ("Under Title VII and the ADEA, a plaintiff must file an administrative charge . . . within 300 days after a claim accrues.")). This statutory filing period is "analogous to [ ] statute[s] of limitations," *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir. 1996), and, as such, "a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 00-CV-6307 (KMK), 2007 WL 259937, at *6 (S.D.N.Y. Jan. 29, 2007); *see also McPherson v. N.Y.C. Dep't of Educ.,* 457 F.3d 211, 214 (2d Cir. 2006). "This period begins to run for each discrete discriminatory act when each such act occurs." *O'Grady*, 556 F. Supp. 2d at 199.

2. Application

Plaintiff filed his DHR complaint on December 16, 2013. Thus, the 300 day window commenced on February 19, 2013. However, plaintiff contends that he was discriminated against in 2011, when a "younger and less qualified person" was hired for the District's audio technician

9

position. (DHR Compl. ¶ 2.) An allegation of discrimination in 2011 (or perhaps even earlier in December 2010 as indicated elsewhere in the amended complaint), is plainly outside of the 300-day actionable window, and thus, untimely. Moreover, plaintiff has made no argument in any of his filings to the Court indicating that the claim should be subject to equitable tolling. Accordingly, the Court dismisses plaintiff's ADEA claim for untimeliness. In an abundance of caution, however, the Court will allow plaintiff to replead his ADEA claim, and give him the opportunity to provide a basis for equitable tolling (if such a basis exists). In the amended complaint, plaintiff must explain why equitable principles should excuse the untimeliness.

However, "[a] federal cause of action for age related employment discrimination under the ADEA is statutorily available only to individuals over forty years of age at the time of the alleged discriminatory action." *Manko v. Deutsche Bank*, No. 02-CV-10180 (TPG), 2004 WL 574659, at *7 (S.D.N.Y. Mar. 22, 2004) *aff'd*, 354 F. App'x 559 (2d Cir. 2009) (citing 29 U.S.C. § 631(a)). Plaintiff alleged that he was born in 1971 and was more than forty years old when defendant discriminated against him. (Am. Compl. ¶ 7.) However, plaintiff was only thirty-nine years old in December 2010, when Hasset was appointed to the provisional hire position. Thus, any ADEA claim for age discrimination based in the December 2010 provisional appointment fails to state a claim upon which relief can be granted. Accordingly, to the extent that plaintiff repleads his ADEA claim to provide a basis for equitable tolling, it must be in connection with discrimination that occurred when he was at least forty years old.

C. Title VII Retaliation

Defendant argues that plaintiff's Title VII retaliation claim should be dismissed because plaintiff has not alleged that he engaged in protected activity or opposed an employment practice made unlawful by Title VII, nor has he alleged that the defendant was aware of such activity. As set forth below, the Court finds that plaintiff has failed to state a Title VII retaliation claim.

1. Legal Standard

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) [he] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)). Title VII protects not only those employees who opposed employment practices made unlawful by the statute but also those who have "'a good faith, reasonable belief that the underlying challenged actions of the employer violated the law'" even if those actions did not. *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) (quoting *Wimmer v. Suffolk Co. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999)). Finally, the Supreme Court has defined an "adverse employment action" in the Title VII retaliation context (distinct from and broader than the standard in the Title VII discrimination context) to mean an action that is "materially adverse" and that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)

(internal citations omitted). The Supreme Court has noted that "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69.

2. Application

Plaintiff indicated on his complaint that the discriminatory conduct of which he complained included retaliation. (Am. Compl. at ¶ 4.) However, plaintiff does not allege that he engaged in any protected activity, or that any such activity was known by the defendant. The only mention of any activities engaged in before plaintiff applied for the provisional appointment was his allegation in his DHR complaint that he advocated for better security and surveillance systems, solar panels, and energy efficient stage lighting to be installed in 2010. (DHR Compl. at ¶ 2.) Such actions do not constitute protected activity under Title VII. Plaintiff has not alleged that he "'had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII.'" *Kessler v. Weschester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d. Cir. 2006) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001)). Thus, plaintiff's allegations are insufficient to state a claim of retaliation, even where the plaintiff is proceeding *pro se*. *See, e.g.*, *Smith v. City of New York*, No. 12-CV-3250 (JMF), 2013 WL 1903856, at *5 (S.D.N.Y. May 8, 2013) (granting motion to dismiss *pro se* plaintiff's complaint where she "checked off the box on the form complaint provided by the Clerk of Court indicating that she suffered retaliation" but "provide[d] absolutely no factual support for that claim"); *Majeed v. ADF Companies*, No. 11-CV-5459 (SJF) (ETB), 2013 WL 654416, at *11 (E.D.N.Y. Feb. 20, 2013) ("A complaint that makes only a general conclusory statement that the defendant retaliated against the plaintiff, and that fails to provide any factual detail describing the specific acts of retaliation, when it occurred and which employee of the defendant had knowledge of the plaintiff's protected activity or actually engaged in the claimed retaliation, is insufficient to withstand a motion to dismiss.")

Therefore, plaintiff has failed to allege any facts that provide a basis for a plausible retaliation claim under Title VII. However, in an abundance of caution, the Court will provide plaintiff with an opportunity to replead with respect to the retaliation claim in order to set forth additional allegations as to how he engaged in protected activity known to defendant that caused defendant to take adverse employment action.

D. First Amendment Claim

1. Legal Standard

"To state a claim for First Amendment retaliation under § 1983, a plaintiff must allege: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Holmes v. Poskanzer*, 342 F. App'x 651, 653 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)); *see also Perri v. Bloomberg,* No. 11-CV-2646 (CBA)(LB), 2012 WL 3307013, at *2 (E.D.N.Y. Aug. 13, 2012).

2. Application

Plaintiff alleges that the Board suspended him on three occasions "from public open meetings in an attempt to censor his right of freedom of speech." (Am.

Compl. at 1.) Plaintiff also alleges that defendant's "administration and board of education [ ] are harassing [him] in an attempt at censorship of [his] freedom of speech." (*Id.* at 5.) He claims that "[a]t board of education meetings, [he] would discuss and put on record facts that they do not want the public to be aware of." (*Id.*) Plaintiff also claims that he wished to attend Board meetings to exercise his "right to freedom of speech as a tax payer who wishes to place on record matters of public concern relating to [his] hometown school district from which [he] graduated from." (*Id.* at 18.) Plaintiff further stated in his opposition that the "district violated [his] freedom of speech in an attempt to censor [his] opinions and advocacy at public board of education meetings." (Pl.'s Opp'n at 2.)

Plaintiff alleges that he was engaged in "advocacy for the community members who disagree with the districts [sic] educational technology, security technology, and energy performance contracts plans," including advocating for the district to "start implementing the plans for a district wide solar arrays on each building." (Am. Compl. at 17.) Plaintiff also contends that "[a]fter Sandy Hook in December 2012, on behalf of the community [he] became vocal at meetings because of various security aspects which the respondent had become complacent with." (DHR Compl. at ¶ 4.) Plaintiff also alleges that he was removed from a public concert and Board meeting in May 2013 because he was supporting a different candidate for president of the Board. (*Id.* at ¶ 6.)

An allegation that an individual has been denied access to a public meeting is sufficient to state a First Amendment claim. *See Patriots Way, LLC v. Marconi,* No. CIV.3:06-CV-1302(PCD), 2007 WL 988712, at *6 (D. Conn. Mar. 30, 2007) ("Had [plaintiff] alleged that he was denied access to a public meeting . . . there would be no question that he properly stated a constitutional violation.") Thus, plaintiff has adequately pled that access to public Board meetings was protected under the First Amendment. Further, plaintiff has alleged that defendant took adverse action against him by suspending him from Board meetings, and that this suspension was based on his prior advocacy for certain technological and security changes within the school, as well as his support for an alternate candidate for president of the Board. Thus, plaintiff's allegations that he was suspended from public school board meetings on three occasions are sufficient to withstand a motion to dismiss.[6]

E. Due Process Claim

1. Legal Standard

In order to assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation and emphasis omitted). Thus, a claimed violation of procedural due process involves a two-step analysis: (1) the court examines whether the State deprived plaintiff of a

---

[6] To the extent that defendant argues that plaintiff was banned from school property due to threats of violence, which are not protected by the First Amendment, plaintiff has alleged that he was banned for different reasons – namely, his advocacy for technological changes and supporting an alternate candidate for Board president. Such a factual dispute as to why plaintiff was in fact barred from District property cannot be resolved on a motion to dismiss.

constitutionally protected interest, and (2) if so, the court determines whether the procedures surrounding that deprivation were constitutionally adequate. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)

2. Application

Plaintiff alleges that his due process rights were violated when the Board "allowed no recourse to refute [his] suspension" from "public open meetings." (Am. Compl. at 1.) Defendant has moved to dismiss, arguing that "[a]ccess to school grounds, however, is not a protected liberty or property interest under New York State law." (Def.'s Mem. of Law at 20.)

Defendant is correct that, under New York law, a plaintiff does not have a constitutionally protected liberty interest in accessing school property. *See, e.g.*, *Hone v. Cortland City Sch. Dist.*, 985 F. Supp. 262, 272 (N.D.N.Y. 1997) ("Looking to New York State law, the Court can find no support for the proposition that Plaintiff enjoyed any right of access to school property."); *Pearlman v. Cooperstown Cent. Sch. Dist.*, No. 3:01-CV-504 (TJM), 2003 WL 23723827, at *3 (N.D.N.Y. June 11, 2003) ("Plaintiff does not, however, cite to any state law or authority granting him unfettered access to school property, either as a citizen or a parent. Indeed, the New York Court of Appeals has held that local school districts have great discretion in determining who shall have access to school property and school students."); *Silano v. Sag Harbor Union Free School Dist. Bd. of Educ.*, 42 F.3d 719, 724 (2d Cir. 1994) (finding board of education member did not have a protected liberty interest in visiting schools, and thus, that a temporary ban on his visits to the schools did not violate his due process rights). Thus, to the extent that plaintiff asserts a liberty interest in accessing the District's property, plaintiff fails to state a claim for violation of his due process rights.

However, to the extent that plaintiff alleges that the defendant denied him of due process by depriving him of his First Amendment rights without sufficient process, by not allowing him an avenue to refute his suspension from public meetings, such a claim can survive the defendant's motion to dismiss. *See, e.g.*, *Cyr v. Addison Rutland Supervisory Union*, 955 F. Supp. 2d 290, 296 (D. Vt. 2013) (holding plaintiff could "continue to assert that the [defendant school], by issuing the notice against trespass, deprived him of First Amendment rights without sufficient process. However, he cannot assert that he possesses a liberty interest – independent of the First Amendment – in accessing school property.")[7]

---

[7] To the extent that plaintiff raises a new due process allegation in his opposition that the defendant damaged his reputation, such a claim is not cognizable. *See, e.g.*, *Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719, 724 (2d Cir. 1994) ("Damage to reputation alone, even by a government entity, does not implicate a liberty interest protected by the Due Process Clause. Our cases have interpreted *Paul* to require the modification or termination of some legal right or status before damage to reputation rises to the level of a constitutional deprivation." (citing *Paul v. Davis*, 424 U.S. 693, 701, 706 (1976)); *Hone*, 985 F. Supp. at 272 ("[A]ny damage to Plaintiff's reputation alone, even by a governmental entity, does not implicate an interest protected by the Due Process Clause.")

F. State Law Claims

In addition to his federal claims, plaintiff also alleges slander by defendant. (Am. Compl. at ¶¶ 4, 8.) "The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001). "In an action for libel or slander, the particular words complained of shall be set forth in the complaint." N.Y. C.P.L.R. § 3016(a). "'The complaint also must allege the time, place and manner of the false statement and . . . specify to whom it was made.'" *Tagliaferri v. Szulik*, No. 15-CV-2685 (LGS), 2015 WL 5918204, at *4 (S.D.N.Y. Oct. 9, 2015) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1999); *see also O'Brien v. Alexander*, 898 F. Supp. 162, 172 (S.D.N.Y. 1995) ("The second amended complaint, however, fails to identify what allegedly defamatory statements were repeated and it fails to allege which false statements were uttered by whom. Hence, these paragraphs are insufficiently pled and must be dismissed as well.") (internal citations omitted).

Although plaintiff makes general allegations throughout his amended complaint that defendant engaged in slanderous practices, (*see, e.g.*, Am. Compl. at ¶ 8 and 17), the only specific claim that he makes in his amended complaint is in connection with his allegations of slander are that: he "was accused of being disgruntled, unstable and a deviant borderline criminal." (*Id.* at 16.) Plaintiff also alleges in his opposition that "[t]hose within my community and family are i[n] disbelief that the district could abuse their authority and have me perceived to be a "Domestic Terrorist" that would be capable of engaging in an act of school violence. This is another form of the district's slander, defamation of my character, and discriminatory treatment." (Pl.'s Opp'n at 2.) Neither of these allegations alleges the time, place, or manner of the false statement, nor do they specify to whom the statements were made. Without specifying to whom and in what context the allegedly defamatory statements were made, the Court cannot determine whether plaintiff has a viable claim for slander under New York law. *See Tagliaferri*, 2015 WL 5918204, at *4. Thus, plaintiff's defamation claim is insufficiently pled and must be dismissed. However, in an abundance of caution, the Court will allow plaintiff to replead his slander claims so as to give him the opportunity to allege the time, place, and manner of the allegedly false statements, as well as to whom the statements were made.[8]

IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendant's motion to dismiss the complaint. In an abundance of caution, the Court grants plaintiff leave to replead his Title VII, ADA, ADEA, and slander claims. In so doing, plaintiff must attempt to provide grounds for

---

[8] To the extent that defendant suggests that plaintiff may be asserting a claim for violation of the Open Meetings Law, the Court construes plaintiff's amended complaint not to allege any such cause of action, but simply as including the Committee on Open Government's advisory opinion to support plaintiff's other claims. However, if plaintiff wishes to assert such a claim, he may do so in a second amended complaint in a clear and concise manner so that the Court can evaluate it.

14

equitable tolling, and must allege how the events and incidents plaintiff describes in his complaint were taken on the basis of, or related to, plaintiff's protected status under Title VII, the ADEA, or the ADA. In repleading his state law slander claim, plaintiff must allege the time, place, and manner of the allegedly false statements, as well as to whom the statements were made. Any amended complaint shall be filed no later than thirty (30) days from the date of this Order. Plaintiff is cautioned that an amended complaint completely replaces the original, and therefore all allegations and claims against all of the defendants that plaintiff wishes to pursue must be included in the amended complaint. Failure to do so will result in dismissal of the Title VII, ADEA, ADA, and slander claims with prejudice.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: February 26, 2016
      Central Islip, New York

\*   \*   \*

Plaintiff is proceeding *pro se*, 20 Frank Ave., Farmingdale, NY 11735. Defendant is represented by Susan M. Gibson and Julie A. Torrey, Ingerman Smith, LLP, 150 Motor Parkway, Suite 400, Hauppauge, NY 11788.